# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION
# LEXINGTON

**CIVIL ACTION NO. 11-18-JBC**

**CHARLES ARNOLD,**                                                  **PLAINTIFF,**

**V.**                **MEMORANDUM OPINION AND ORDER**

**RENT-A-CENTER, INC.,**                                    **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the motion of defendant Rent-a-Center, Inc. ("RAC") to dismiss or, in the alternative, to stay proceedings and compel arbitration. R. 3. For the reasons below, this court will deny the motion.

## I.   Background

This matter stems from an employment dispute between RAC and plaintiff Charles Arnold. Arnold has been an employee of RAC for approximately 11 years. Arnold was a store manager until 2005, when he was promoted to district manager. While serving as district manager, Arnold went on Family and Medical Leave Act ("FMLA") leave on August 7, 2010. While on leave, Arnold was orally notified he was being demoted from his district manager position to a store manager position. When Arnold returned from leave on or about December 1, 2010, he was demoted to a store manager.

While employed by RAC, Arnold signed two agreements entitled "Mutual Agreement to Arbitrate Claims." R. 3-3 and 3-4. The first agreement ("2001

1

Agreement") was signed by Arnold on December 11, 2001. The record contains the four-paged faxed agreement which is stamped "received" on December 14, 2001. The agreement states that RAC and Arnold "mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present or future." R 3-3 at 1. "The claims covered by this Agreement include, but are not limited to: … tort claims; claims for discrimination (including, but not limited to race, sex, sexual harassment, sexual orientation, religion, national origin, age, workers' compensation, marital status, medical condition, handicap or disability); claims for benefits; … and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance, except claims excluded in the section of this Agreement entitled 'Claims Not Covered by the Agreement.'" *Id.* In addition to signing at the signature line on bottom of the fourth page, Arnold signed the bottom of the preceding three pages.

The second agreement ("2005 Agreement") was signed by Arnold on January 6, 2005. However, the agreement in the record includes only the signature page. While the top right corner of the page states that this is "Page 5 of 6," the other pages of the document are not in the record. R. 3-4 at 2. The clauses on the page in the record state that the document is the complete agreement of the parties; if any provision of the agreement is void or unenforceable, it does affect the validity of the remainder of the agreement; giving up the right to litigate is consideration; the document is not an employment agreement; and the signatory has read the agreement and it constitutes the complete agreement. The language contained in the page of the 2005 Agreement included in the record is identical the same section of the 2001 Agreement. However, it is not the same language contained in the arbitration agreement RAC sent Arnold in

2010, which he refused to sign. R. 3-4. Additionally, the page of the 2005 Agreement is written in a different font, spaced differently, and apparently contained more pages than the 2001 Agreement.

RAC submits a declaration from Steven A. Spratt, the Senior Director of Compensation and Benefits and a Custodian of Records for RAC. He states that it is the "policy and practice of RAC to present an entire Arbitration Agreement to an employee for review and signature." R. 3-2 at 2. However, "periodically, . . . the store at which the employee works only sends the signature page to corporate headquarters." *Id.* Spratt states that "[f]or some reason, sometimes the personnel file does not contain all pages of an Arbitration Agreement." *Id.* RAC asserts that since the 2001 and 2005 Agreement are identical (apart from the formatting changes mentioned previously), this court should use the terms of the 2001 agreement to determine whether to compel arbitration.

However, Arnold asserts that he has "no recollection of ever being presented with any other portion of the 2005 agreement other than the one page he signed." R. 9 at 1. He states that he thought the one page he signed was the entire agreement to arbitrate. Arnold asserts that he "is not simply attacking the validity of an alleged agreement to arbitration; he is instead asserting that no valid agreement to arbitrate even exists between the parties." R. 9 at 2.

## II. Analysis

Most circuits have used the summary judgment standard when considering motions to dismiss or stay based on the existence of a valid arbitration agreement. *See*

*Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n .9 (3d Cir.1980) (applying summary judgment standard in deciding issue of whether there was an agreement to arbitrate); *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir.2003) (holding that in the context of motions to compel arbitration, court applies a summary judgment standard). This circuit has stated that "[i]n order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate," a showing that mirrors the summary judgment standard. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).This court will treat the motion to compel arbitration as one for summary judgment under Fed. R. Civ. Pro. 56(c).

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc* ., 473 U.S. 614, 626 (1985). More specifically, the court has four tasks when it considers motions to stay proceedings and to compel arbitration:

> first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether … those claims [are] nonarbitrable; and fourth, if the court determines that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir.2000).

This court is "unable to determine the scope of [the] agreement" because the

4

agreement in the record does not contain the complete terms of the agreement. "While ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) (internal citations omitted). *See Masco Corp. v. Zurich American Ins. Co.*, 382 F.3d 624, 627 (6th Cir.2004). The portion of the contract in the record does not contain language indicating which, if any, disputes will be arbitrated.

Arnold has shown there is a genuine dispute of material fact as to whether the terms of the agreement to arbitrate covers the instant dispute. All evidence in a motion for summary judgment must be viewed in favor of the nonmoving party. The court accepts all facts presented by Arnold as true for the purpose of this motion. *Schreiber v. Moe*, 596 F.3d 323, 329 (6th Cir. 2010). Arnold has included in the record the 2010 arbitration agreement, which is not identical to the 2001 Agreement. RAC's assertion that the 2001 agreement is identical to the 2005 agreement does not show this court that there is no dispute as to the terms of the agreement. Additionally, Arnold asserts in his affidavit that he was presented with only one page of the 2005 Agreement to sign.

**III.  Conclusion**

Accordingly,

**IT IS ORDERED** that the motion to dismiss, or, in the alternative, to stay

5

proceedings and compel arbitration (R. 3) is **DENIED WITHOUT PREJUDICE**.

Signed on May 12, 2011

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY